## Chambers v. Domino's Pizza Inc.

*Laurie Juengert,* for plaintiffs.
*Robert A. Levman,* for defendant Domino's Pizza Inc.

DOWLING, *J.,* September 15, 1988—
*Neither ice, nor traffic, nor potholes, nor lack of pay · daunts these drivers from the unenviable task of their 30-minute delivery.*[1]

Domino's Pizza Inc., an international franchisor of pizza stores, objects to certain of plaintiffs' document requests. In an order dated May 5, 1988, the court allowed plaintiffs' attorneys to examine all editions of the *Pepperoni Press* from January 1, 1985 to June 4, 1985, the date of the automobile accident which forms the basis of this suit. From these editions, plaintiffs have culled 38 pages which they wish to obtain and which Domino's claims are privileged under Pa.R.C.P. 4011(c) and 4012(a)(9), 42 Pa.C.S.

This is an automobile negligence suit in which plaintiffs claim in counts 9, 10 and 11 of their complaint that Domino's is liable under theories of respondent superior, peculiar risk of harm and negligent supervision, respectively. Essentially, they allege that Domino's 30-minute delivery policy,[2]

1. With apologies to Herodotus.
2. According to a phone call to a Harrisburg Domino's franchise, if the pizza is delivered over 30 minutes after the order is placed, the customer receives a $3 discount.

which is required of all franchises, and its awards and incentives programs, contributed to negligent or reckless driving and that this was a substantial cause of the accident in which they received injuries. The *Pepperoni Press,* which is an internal corporate newspaper published in Ann Arbor, Michigan, and distributed to franchisees on a weekly basis, contains a wide variety of information concerning Domino's programs, awards, franchisees and employees. For example, some of the articles concern driver training courses, the 30-minute delivery goal, driver achievements and lowest average delivery times, among others. Defendant makes a blanket assertion that the desired pages contain "proprietary, confidential and privileged" information, but does not point to any specific material that should be protected. That these articles are relevant and "reasonably calculated to lead to the discovery of admissible evidence" cannot be disputed. Pa.R.C.P. 4003.1, 42 Pa.C.S.

Defendant cites *Allen Electronics v. Flock,* 31 Lehigh L.J. 228 (1965) and *United States v. International Business Machines Corp.,* 67 F.R.D. 40 (S.D.N.Y 1975) as support for its argument that the information is privileged. Neither case is helpful. When *Flock* was decided, rule 4011 provided that "no discovery or inspection shall be permitted which . . . (c) . . . would require the disclosure of any secret process, development or research." *Id.* at 230. In *Flock,* Judge Wieand, now a member of the Superior Court, noted that unlike the federal counterpart, the Pennsylvania rule prohibited disclosure "unconditionally." *Id.* Goodrich-Amram 2d §4012(a): 9. Since the 1978 amendments, however, rule 4012 grants the court discretion in these matters; they are no longer absolutely protected. Moreover, the facts in *Flock* were more compelling in at least two

respects. First, the material requested, "Plans, designs, proposals, programs . . . prepared by T.L. Flock . . . pertaining to the design, manufacture, production or distribution of vending machines" clearly involved proprietary information, the disclosure of which would impact on potential patents and their value. Secondly, plaintiff was a direct business competitor of defendant. We have reviewed every page requested and have not found any proprietary information which should be protected nor has Domino's pointed to any objectionable material. Their blanket assertion will not suffice. Finally, the Chambers' are not, to our knowledge, connected with the pizza industry in any way, and thus are not competitors of Domino's.

*International Business Machines* is illustrative of the discretionary concept embodied in the federal rules and the new Pennsylvania Rules of Civil Procedure. In that case, the court held that the party asserting privilege has the burden to demonstrate *"a clearly defined and very serious injury* to his business." *Id.* at 46. (emphasis in original) Further, one of the factors to be considered in determining whether information is to be treated as a trade secret is "the extent to which it is known by employees and others involved in his business." *Id.* at 47. Here, the information requested is distributed to every franchisee nationwide and is read by countless persons. The harm which may befall defendant has not even been alleged, much less established.

Accordingly, we enter the following

## ORDER

And now, September 15, 1988, defendant Domino's Pizza Inc. is directed to furnish a copy of all 38 pages of the *Pepperoni Press* that were provided to the court at the September 2, 1988 discovery conference.